IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>　　　Plaintiff, )<br>)<br>v. )　　　Case No. 23-cr-30062<br>)<br>)<br>JALANE MOLTON, )<br>　　　Defendant. ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Defendant Jalane Molton moves to dismiss the single-count indictment charging him with illegal possession of a firearm by a felon, arguing Section 922(g)(1) is unconstitutional as applied to him under the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). For the following reasons, Defendant's Motion to Dismiss Indictment is DENIED.

### I.    LEGAL STANDARD

Rule 12(b)(3) authorizes a defendant to move to dismiss an indictment prior to trial if the indictment contains a defect. Fed. R. Crim. P. 12(b)(3)(B)(v). To succeed on a facial challenge to the constitutionality of a statute, the movant must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415 (2015). The challenger must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In an as-applied challenge, the movant must show that the statute is unconstitutional because of the way it is applied to the particular facts of their case. *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

## II. DISCUSSION

Defendant argues that the Second Amendment covers § 922(g)(1)'s permanent prohibition on firearm possession and encompasses felons as members of "the people" who have the right "to keep and bear Arms." Defendant further argues without a history of similar laws, the Government cannot demonstrate that § 922(g)(1)'s permanent deprivation is consistent with the Nation's historical tradition of firearm regulation. Finally, Defendant contends that even if the Government could make that showing, there is no evidence of a dispossession statute with a comparable burden to § 922(g)(1).

Citing the numerous courts since *Bruen* that have upheld the constitutionality of § 922(g)(1), the Government asks the Court to hold that (1) the plain text of the Second Amendment does not presumptively protect the right of felons to possess firearms; and (2) even if it did, § 922(g)(1) is constitutional as applied to all felons because it "is consistent with the Nation's historical tradition of firearm regulation" under *Bruen*.

The Government contends that, assuming the Second Amendment's text encompasses felons' possession of firearms, Defendant's challenge to § 922(g)(1) fails because the "regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" under *Bruen*. There is a historical tradition of legislatures enacting regulations to disarm categories of individuals that predates the United States and continues through the founding era. Specifically, the Government points to two types of historical laws: (1) laws categorically disqualifying groups who were untrustworthy adherents to the law from possessing firearms, and (2) laws authorizing capital punishment and estate forfeiture for felonies.

Since the parties filed their briefs on the constitutionality of § 922(g)(1), the United States Supreme Court decided *United States v. Rahimi*, 602 U.S. 680 (2024), which addressed the constitutionality of § 922(g)(8). Several federal courts of appeal have also now weighed in on the constitutionality of § 922(g)(1).

### A. Section 922(g)(1) and Supreme Court Precedent

Section 922(g)(1) makes it an offense for a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. Based on the framework articulated by the Supreme Court in *Bruen*, Defendant alleges § 922(g)(1) violates the Second Amendment and the indictment must be dismissed.

Prior to *Bruen*, the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008) noted the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581. The Court explained that, "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not just an unspecified subset." *Id.* at 580. Based on that language, Defendant contends the Second Amendment applies to felons and non-felons alike. He argues he does not lose his Second Amendment rights just as he does not lose his First Amendment right to petition the government and his Fourth Amendment right to be free from warrantless searches. However, the Court in *Heller* further held that the Second Amendment guarantees the right of "law-abiding, responsible citizens" to keep and bear arms for self-defense and noted that the right to keep and bear arms "is not unlimited" and remains subject to "presumptively lawful

regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons." *Id.* at 635, 626-27; *see McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010)(extending *Heller* to state and local governments while reiterating that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'")

The Supreme Court has repeatedly stated that "the people" protected by the Second Amendment include "ordinary, law-abiding, adult citizens," *see Bruen*, 597 U.S. at 31-32, who are "members of the political community," *see Heller*, 554 U.S. at 580; *see also McDonald*, 561 U.S. at 786 (emphasizing *Heller*'s holding). The first sentence of *Bruen* refers to the "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" as protected by the Second Amendment. *Bruen*, 597 U.S. at 8-9. The Court reiterated that the Second Amendment "surely elevates above all interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Id.* at 26 (quoting *Heller*, 554 U.S. at 635). The final paragraph of the majority opinion in *Bruen* states in part: "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 71. Thus, *Bruen* and *Heller* clearly articulate that the Second Amendment protects the right of responsible, law-abiding citizens to possess firearms.

In *Bruen*, the Supreme Court announced that lower courts should no longer balance interests such as an individual's right to possess a firearm and the state's commitment to promoting personal or public safety to determine the constitutionality of the challenged restriction. Based on the Second Amendment's text and the applicable

history of firearms regulation, the government now bears the burden of "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. Because people convicted of felonies existed in the United States when the Second Amendment was ratified in 1791, it follows that § 922(g)(1) addresses a "general societal problem that has persisted since the 18th century." *Bruen*, 597 U.S. at 26.

When a challenged regulation addresses a longstanding societal problem, "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* If "the Founders themselves could have adopted" a particular regulation to confront a longstanding problem and did not do so, that could suggest that the law today is unconstitutional. *Id.* For "modern regulations that were unimaginable at the founding," the government must produce historical evidence that is "relevantly similar." *Bruen*, 597 U.S. at 28-29. "[I]f earlier generations addressed the societal problem, but did so through materially different means, that could also be evidence that a modern regulation is unconstitutional." *Id.* at 26-27.

The Supreme Court instructed courts to identify historical analogues to modern firearm regulations by assessing "how and why regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29. While the Court in *Bruen* did not "provide

an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it directed courts to weigh as central considerations "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* The Court further stated:

> To be clear, analogical reasoning under the Second Amendment is neither a regulatory straitjacket nor a regulatory blank check. On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue because doing so risks endorsing outliers that our ancestors would never have accepted. On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Id.* at 30 (internal quotation marks and citations omitted).

In *Rahimi*, the Supreme Court considered the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits an individual subject to a domestic violence restraining order from possessing a firearm if the order includes a finding that he "represents a credible threat to the physical safety of an intimate partner," or a child of the partner or individual. *Rahimi*, 602 U.S. at 684-86. In considering the constitutionality of the statute, the Court examined historical surety laws, which "authorized magistrates to require individuals suspected of future misbehavior to post a bond" and "going armed laws," which "prohibited riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land." *Id.* at 695-97 (citation omitted). The Court noted the "two distinct legal regimes," *id.* at 694-95, established that "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical

harm to others from misusing firearms." *Id.* at 690. In rejecting Rahimi's challenge to § 922(g)(8), the Court held that "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698.

### B. Appellate Decisions Interpreting *Bruen* and *Rahimi*

The Seventh Circuit has not specifically considered whether § 922(g)(1) violates the Second Amendment. In a case decided prior to *Rahimi*, however, that court described a defendant's argument that individuals with felony convictions are permitted under the Second Amendment to possess firearms and ammunition as hard to square with *Heller*'s unequivocal statement that "longstanding prohibitions on the possession of firearms by felons" are valid. *United States v. Gay*, 98 F.4th 843, 846 (7th Cir 2024) (citation omitted). The court in *Gay* noted that the Supreme Court in *McDonald* reiterated that all of the reservations and provisos in *Heller* remain valid. *Id.* "And in the Court's most recent Second Amendment decision . . . *Bruen* . . . Justices Alito and Kavanaugh, whose votes were essential to the majority, wrote separately to say that *Bruen* did not change anything about *Heller*." *Id.* (citing *Bruen*, 597 U.S. at 72, 142 S. Ct. 2111 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80-81, 142 S. Ct. 2111 (Kavanaugh, J., joined by the Chief Justice, concurring) (endorsing the statement in *Heller* about the propriety of denying firearms to felons)). *Id.*

The Seventh Circuit assumed without deciding "there is *some* room for as-applied challenges" by non-violent offenders to § 922(g)(1). *Id.* However, that would not help Gay, who had been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison and was on parole. *Id.* at 846-47. Thus, Gay was not a "law-abiding responsible citizen" who retained Second Amendment rights. *Id.* The court further concluded "that parolees lack the same armament rights as free persons." *Id.* at 847.

While one circuit court of appeal determined that § 922(g)(1) was unconstitutional as applied to a non-violent felon who had challenged the statute in a declaratory judgment action, *see Range v. Attorney General*, ___ F.4th ___, 2024 WL 5199447, at *8 (3d Cir. Dec. 23, 2024) (*en banc*), every appellate court that has considered a challenge to § 922(g)(1) in a criminal prosecution has determined that it is constitutional. *See United States v. Fadiga*, 2024 WL 3338304, at *3 (3d Cir. July 9, 2024); *United States v. Jackson*, 110 F.4th 1120, 1127 (8th Cir. 2024); *United States v. Diaz*, 116 F.4th 458, 461-62 (5th Cir. 2024); *United States v. Curry*, 2024 WL 3219693, at *4 n.7 (10th Cir. June 28, 2024); *United States v. Johnson*, 2024 WL 3371414, at * (11th Cir. July 11, 2024); *United States v. Langston*, 110 F.4th 408, 419-20 (1st Cir. 2024).

C. **Defendant's Challenges to § 922(g)(1)**

To the extent that Defendant raises a facial challenge to the constitutionality of §922(g)(1), Defendant's argument fails based on the Seventh Circuit's determination that Supreme Court precedent has foreclosed such challenges. *See Gay*, 98 F.4th at 846. In considering Gay's as-applied challenge, the Seventh Circuit noted the emphasis in *Bruen*

on the phrase "law-abiding, responsible citizens" or similar language and determined that did not describe Gay, given his extensive criminal history and parole status. *Id.* at 846-47. The Seventh Circuit also found it significant that instead of challenging § 922(g)(1) through a declaratory judgment action, Gay had "violated the law in secret and tried to avoid detection." *Id.* To the extent that some individuals might be able to raise a successful as-applied challenge to § 922(g)(1), the Court concludes Defendant would not be one of those individuals for the same reason the Seventh Circuit determined that Gay was not.

As in *Gay*, Defendant is not challenging the statute through a declaratory judgment action. The Pretrial Services Report indicates that Defendant, who was 23-years old at the time he is alleged to have committed this offense, was convicted of robbery and aggravated unlawful use of a weapon at age 18 and sentenced to three years in the custody of the Illinois Department of Corrections, followed by two years of mandatory supervised release. In 2021, Defendant was convicted in state court of unlawful possession of a weapon by a felon and sentenced to four years imprisonment, followed by one year of mandatory supervised release. He was on supervised release for that offense at the time he was charged in this case.

Based on the reasoning in *Gay* and by every federal court of appeals to consider whether individuals similarly situated to Defendant retain Second Amendment rights, the Court concludes that an individual with Defendant's criminal history is not a "law-abiding, responsible" citizen who has a constitutional right to possess firearms under *Bruen* and its progeny. *See Gay*, 98 F.4th at 846-47. Defendant's recent criminal history

also demonstrates that he poses a threat of physical violence to others and is not a "law-abiding, responsible citizen" who has a right to possess firearms. *See Rahimi*, 602 U.S. at 698 ("When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."). Defendant also lacked armament rights due to his supervised release status. *See Gay*, 98 F.4th at 847.

### III. CONCLUSION

For the reasons stated herein, any facial challenge to § 922(g)(1) cannot succeed. Defendant's as-applied challenge fails due to his criminal history, which demonstrates he is not a "law-abiding, responsible citizen" who retains the constitutional right to possess firearms for self-defense. Therefore, Defendant Jalane Molton's Motion to Dismiss Indictment as Unconstitutional [Doc. 16] is DENIED.

ENTER: January 17, 2025

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE